UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>v.<br><br>EDWIN FUENTES-ENAMORADO,<br><br>  Defendants. | Case No. 2:12-cr-00287-MMD-VCF<br><br>ORDER |
|---|---|

**I.  SUMMARY**

Before the Court is Edwin Fuentes-Enamorado's ("Petitioner") Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence ("Motion") filed by counsel Dan Winder. (Dkt. no. 75.) The Court ordered the government to respond and permitted Petitioner to file a reply. (Dkt. nos. 76 & 79.) Pursuant to the Court's instruction, the government filed a response. (Dkt. no. 78.) Petitioner did not file reply in further support of the Motion.

**II.  BACKROUND**

On August 7, 2012, the Grand Jury indicted Petitioner on one count of Illegal Alien in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(5)(A) an 924(a)(2). (Dkt. no. 1.) On February 28, 2013, the Court granted Petitioner's request for a thirty (30) day continuance of trial to permit Petitioner to secure the attendance of a witness, Sophie Goodell, at trial. (Dkt. no. 21.) Petitioner's counsel represented that Ms. Goodell was back in town and was willing to talk to Petitioner's counsel, which prompted the request for continuance.

Trial was held on March 26, 2013. (Dkt. no. 35.) The main issue presented involved the first element of the offense — whether Petitioner knowingly possessed a firearm. The parties stipulated to the remaining two elements of the offense: (1) the firearm had been shipped or transported in interstate commerce and (2) Petitioner was an alien illegally or unlawfully present in the United States on the date alleged in the indictment, July 12, 2012. (Dkt. no. 65 at 166.)

At trial, the government presented evidence to establish the discovery of the firearm and Petitioner's possession of the firearm. On July 12, 2012, during the course of executing a search of a residence, law enforcement personnel found a firearm, a Heckler & Koch 9 millimeter handgun, underneath a pillow on the bed in one of the bedrooms.[1] (Dkt. no. 65 at 100-101.) They found articles in the bedroom associated with a male occupant and other items in the bedroom belonging to Petitioner, including his driver's license and a copy of his immigration paperwork (application for temporary protective status). (*Id.* at 103-107.) Petitioner arrived at the house around 1:00 a.m, while the search was still in progress. (*Id.* at 108, 132.) Petitioner admitted that the bedroom in question belonged to him and that he had been renting the room for about seven (7) months.[2] (*Id.* at 110.) Petitioner also admitted to officers on the scene that the firearm belonged to a friend and he kept it under his pillow for protection although he knew he should not possess the firearm because of his status. (*Id.*)

Petitioner did not call any witness but he elected to testify. Petitioner testified that Ms. Goodell had a separate room, but she stayed in his room after they became involved romantically. (Dkt. no. 65 at 131.) Petitioner testified that there were people constantly showing up to the house who were on narcotics and he did not trust them. (*Id.*) According to Petitioner, he and Ms. Goodell got into an argument so he left the

---

[1] There is no evidence that Petitioner had any involvement in the activities that led to the search warrant.

[2] The house was owned by Patrick Leonard Feil. (Dkt. no. 65 at 115-16.) Mr. Feil resided in the house with his fiancée and two separate rooms were rented to Petitioner and Sophie Goodell, who together formed a romantic relationship while they resided in the house. (*Id.* at 116-18.)

house for a couple of days to give her space. (*Id.*) Ms. Goodell called him earlier in the day to tell him that some of the people they distrust were coming over and "she grabbed the pistol [from another bedroom], and she put it underneath the pillow" in his bedroom. (*Id.* at 133, 141.) He initially was not concerned about her having the firearm, but later decided to return home and had planned to ask her to remove the firearm from his bedroom. (*Id.* 147-49.) When he arrived and saw that Ms. Goodell was in handcuffs, he told law enforcement officers that he was in possession of the firearm because of his impulse to protect his girlfriend. (*Id.* at 142-45.) He testified that he knew that given his illegal alien status, he was not supposed to possess a firearm. (*Id.* at 143-151.)

The jury returned a guilty verdict. (Dkt. no. 41.) Petitioner appealed and the Ninth Circuit Court of Appeals affirmed. *See United States v. Fuentes-Enamorado*, 13–10387, 2014 WL 2024856, at *1 (9th Cir. May 19, 2014); (dkt. no. 69).

**III.   DISCUSSION**

Petitioner's Motion asserts two grounds for ineffective assistance of counsel. In his first ground, Petitioner argues that counsel was ineffective for failing to: (1) "preserve the sufficiency ground;" and (2) "call the girl friend . . . who would have testified that it was her weapon and that [Petitioner] was actually innocent." (Dkt. no. 75 at 3.) In his second ground, Petitioner contends that counsel was ineffective for failing to "research, investigate and prepare the defense that there was an application for relief pending with Immigration at the time of the seizure." (*Id.* at 3-4.)

"[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970). Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that: (1) counsel's performance was unreasonably deficient; and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-91 (2000) (*citing Strickland,* 466 U.S. at 687). To establish ineffectiveness, the petitioner must show that counsel's

3

representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id. Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness,. . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (internal quotation marks and citations omitted). Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Petitioner fails to satisfy *Strickland*'s second prong ("prejudice prong") for each of his grounds.

**A.   Ground 1**

As noted, ground 1 raises separate claims. The first claim contends that trial counsel failed to challenge the sufficiency of the evidence after close of evidence, thereby prejudicing Petitioner's right on appeal since his appeal was reviewed on a more stringent "plain error or manifest injustice" standard. (Dkt. no. 75 at 3.) This claim fails to satisfy the prejudice prong of the *Strickland* test in that Petitioner cannot show that counsel's alleged deficient performance prejudiced his defense. In affirming the jury's verdict, the Ninth Circuit did review the sufficiency of the evidence even though his trial counsel did not raise a Rule 29 motion at close of the evidence. In particular, the Ninth Circuit found as follows:

> The record does not indicate that any error occurred, much less plain error or a miscarriage of justice. Rather, in viewing the evidence in the light most favorable to the prosecution, the record amply supports the jury's verdict.

4

*Fuentes-Enamorado*, 2014 WL 2024856 at *1; (dkt. no. 69 at 2). In fact, had a Rule 29 motion been filed, the Court would have denied it on the same basis. Petitioner thus fails to show that counsel's failure to challenge the sufficiency of the evidence prejudiced his defense.

The second claim asserts that Petitioner had informed his counsel that the firearm belonged to his girlfriend, who would have corroborated his testimony that Petitioner had not been staying at the house and that the gun was hers. (Dkt. no. 75 at 3.) However, Petitioner fails to offer any evidence to support this assertion. Without any corroborating evidence, the Court would only be speculating as to what Ms. Goodell would have testified to regarding the firearm. For example, the Court would be speculating as to why counsel decided not to call Ms. Goodell after the Court continued the trial to permit counsel to secure Ms. Goodell's attendance. One possible reason is counsel was not able to contact Ms. Goodell. Yet, another possible reason may be Ms. Goodell was not going to offer corroborating evidence. Indeed, at trial Defendant testified that he had not talked to Ms. Goodell since November 2012 and at that time, they did not discuss the charge. (Dkt. no. 65 at 145-146.) It appears that Petitioner is also guessing as to what Ms. Goodell may have said about the firearm. Petitioner cannot satisfy *Strickland*'s prejudice prong based on speculation as to what Ms. Goodell's testimony may have offered about the firearm. *See United States v. Palomba,* 31 F.3d 1456, 1461 (9th Cir. 1994) (affirming district court's finding of lack of prejudice where petitioner did not produce any evidence suggesting that counsel's failure to defeat venue had any impact on the fairness of trial or would have affected the outcome of the trial).

B.   **Ground 2**

In ground 2, Petitioner argues that based on testimony of an agent at the detention hearing, his trial counsel was aware that he had an application for temporary status pending with ICE and should have further investigated to explore Petitioner's available defenses. (Dkt. no. 75 at 3-4.) Petitioner appears to suggest that further

5

inquiry may have presented him with two alternative defenses: (1) if such application was granted, he would have an absolute defense; and (2) if he reasonably believed he had temporary protective status, he would have a defense of mistake.[3] (*Id.*) With respect to the first claim, Petitioner again offers no evidence as to the status of his application to satisfy the prejudice prong under *Strickland*. In fact, the parties stipulated as to Petitioner's alien status. (Dkt. no. 65 at 166.) Petitioner also testified that he knew his immigration status. (*Id.* at 143-151.) With respect to the second claim, Petitioner's belief or mistake as to his status is not a defense to the charge. This is because knowledge is not relevant to the status of the possessor. *See United States v. Montero-Camargo,* 177 F.3d 1113, 1120 (9th Cir. 1998) *withdrawn*, 192 F.3d 946 (9th Cir. 1999), *opinion reinstated in relevant part*, 208 F.3d 1122, 1128 n.8 (9th Cir. 2000) (en banc) (finding that a defendant "need not have known that he was in the United States illegally to 'knowingly violate' 18 U.S.C § 922(g)(5) as knowledge pertains only to the item possessed and not to the status of the possessor.") Thus, Petitioner cannot demonstrate that counsel's failure to investigate his application for temporary status prejudiced his defense and therefore fails to meet *Strickland's* prejudice prong.

Petitioner fails to show that his trial counsel was ineffective. Accordingly, Petitioner's Motion is denied.

## IV.   CERTIFICATE OF APPEALABILITY

Before Petitioner can appeal the Court's decision to deny his Motion to Vacate, he must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22; 9th Cir. R. 22-1; *United States v. Washington*, 653 F.3d 1057, 1059 (9th Cir. 2011). To receive such a certificate, a petitioner must make "'a substantial showing of the denial of a constitutional right' as to each issue the petitioner seeks to appeal." *Washington*, 653 F.3d at 1059 (*quoting* 28 U.S.C. § 2253(c)(2), (3)). "The petitioner

---

[3] It is not clear to the Court how Petitioner would be able to show that he reasonably believed he had temporary protected status if his application was pending. Among the items found in Petitioner's bedroom was an application for temporary protected status. (Dkt. no. 65 at 106-07.)

must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court determines that reasonable jurists would not find its reasoning debatable or wrong. Thus, the Court will deny a certificate of appealability.

## V. CONCLUSION

It is therefore ordered that Edwin Fuentes-Enamorado's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (dkt. no. 75) is denied. It is further ordered that Petitioner is denied a certificate of appealability.

DATED THIS 6th day of October 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE